IN THE
UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

      v.            Criminal No. 06-247 (RJL)

**YEATO PRALL**,

      **Defendant.**

## MOTION TO REVIEW ORDER OF DETENTION

Yeato Prall, by and through counsel, respectfully moves this Court to reconsider Ms. Prall's detention status. As grounds for this request, Ms. Prall states the following:

1. On May 26, 2006, Ms. Prall had her initial appearance before United States Magistrate Judge Alan Kay after her arrest for allegedly threatening a federal official and others. On May 31, 2006, a preliminary hearing was conducted in this case. After the hearing, a forensic evaluation was ordered to be conducted by the psychiatric staff of the Legal Services Division. At that time, the court set a $50,000 cash bond.

2. On June 6, 2006, a hearing was held before Magistrate Judge Alan Kay to determine if Ms. Prall should undergo a complete forensic evaluation to assess her competency. After the hearing, Magistrate Judge Kay ordered that a forensic evaluation be done. Ms. Prall was held without bond and she was committed to the custody of the U.S. Attorney General.

3. On August 17, 2006, an indictment was returned against Ms. Prall charging her with making a threatening electronic communication (18 U.S.C. § 875(c)) and with threatening a federal official (18 U.S.C. § 115). Ms. Prall was arraigned on these charges on September 15, 2006 and she entered pleas of not guilty at that time.

4.  Congress enacted the Bail Reform Act of 1984 to give courts the authority to consider factors such as community safety and the likelihood of flight in making release determinations. In passing the Act, however, Congress did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses. Indeed, the Act expressly provides that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). Significantly, Courts have recognized that the statutory scheme of Section 3142 continues to favor release over pretrial detention. See United States v. Orta, 760 F. 2d 887, 890-892 (8th Cir. 1985); United States v. Miller, 625 F. Supp. 513, 516-17 (D. Kan. 1985).

5.  In Ms. Prall's case, she does not pose the danger to the community with which the 1984 Bail Reform Act is concerned. The passage of the pretrial detention provision of the 1984 Act bespeaks a recognition that "<u>there is a small but identifiable group of particularly dangerous [persons]</u> as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this <u>limited group</u> ... that the courts must be given the power to deny release pending trial." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted in U.S. Code Cong. & Ad. News 3189 (emphasis supplied). Ms. Prall is clearly not a part of this "limited group".

6.  Although the instant offense involves a crime of violence in which she allegedly made threats against an Associate Judge of the Superior Court of the District of Columbia, she has not injured or caused harm to anyone. Additionally, there is no evidence that she has taken any affirmative steps to carry out any threats or that she

has made any attempts to harm anyone.  Therefore, there is absolutely nothing about the instant offense which remotely suggests that Ms. Prall will pose any danger to the community.

7. Moreover, there is nothing in Ms. Prall's background which indicates that she may pose a danger to the community.  According to the Pretrial Services Report, Ms. Prall has no prior convictions.  Therefore, Ms. Prall's criminal history indicates that she will not pose a danger to the community.

8. The court ordered forensic evaluation conducted at the Federal Medical Center in Carswell gave insight into Ms. Prall's condition and provided an assessment of whether she was able to understand the proceedings against her and to aid in the preparation of her defense.  Specifically, Dr. Robert Gregg, Chief Psychologist, determined that Ms. Prall is competent but she is suffering from two treatable mental illnesses.  Importantly, the evaluation did not indicate that she was suffering from a chronic mental disorder with abnormal or violent social behavior or that she was a perceived threat to herself or others.  Counsel, through a colleague in the office, spoke to Dr. James Shadduck, an associate of Dr. Robert Gregg, who was able to observe and speak to Ms. Prall upon her admission and on several occasions during her stay. Dr. Shadduck provided his medical opinion and stated that Ms. Prall's condition improved once she was given the proper medication to treat her severe depression, and that she only exhibited anxiety concerning her medical ailments upon her arrival and imminent return to the D.C. Jail.

9. In addition to posing no danger to the community, Ms. Prall's appearance in court can be reasonably assured by means other than pretrial detention.

Significantly, this is Ms. Prall's first contact with the criminal justice system. She has been very cooperative with counsel and has not had any disciplinary problems at the D.C. Jail or the Central Treatment Facility since her arrest.

10. Additionally, Ms. Prall has significant ties to the Washington, D.C. community. She has lived in Washington, D.C. for fifteen years as she pursued higher education. Although, Ms. Prall was unemployed at the time of her arrest, she was pursuing her Doctor of Philosophy degree.

11. As indicated above, Ms. Prall neither poses any threat to the safety of the community nor any risk of flight. Therefore, pursuant to Title 18 U.S.C. § 3142(b), the Court is required to release Ms. Prall either on personal recognizance or on an unsecured appearance bond. In consistence with Section 3142(b), Ms. Prall respectfully requests that this Court release her on her personal recognizance.

12. In the event the Court determines that a personal recognizance or unsecured appearance bond will not reasonably assure Ms. Prall's appearance or the safety of the community, 18 U.S.C. § 3142(c) still mandates release subject to the "least restrictive" condition or combination of conditions that the Court determines will reasonably assure the above stated objectives. If this Court determines that additional conditions are needed, Ms. Prall respectfully requests that this Court impose one or more of the following additional conditions: (1) that she be released to the Options Program under the supervision of the Specialized Supervision Unit of the Pretrial Services Agency[1] ; (2) enroll in a mental health treatment program as directed by the

---

[1] Due to complications that have arisen in finding a suitable program for Ms. Prall to address her housing needs and mental health treatment, counsel has, after an exhaustive search,

Pretrial Services Agency; (3) stay away from Judge Russell Canan to include telephone calls and/or e-mails and; (3) that she obtain full-time employment;

WHEREFORE, for these reasons and any such reasons that shall appear to the Court, the defendant, Yeato Prall, respectfully requests that her motion be granted.

Respectfully submitted,

A.J. KRAMER
Federal Public Defender

/s/
_____
Tony W. Miles
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

---

found that the most suitable program for Ms. Prall is in the Options Program within the Specialized Supervision Unit of the Pretrial Services Agency.  Counsel, through a colleague in the office, has contacted Ms. Tracy Carson. Ms. Carson is a supervisor in the Specialized Supervision Unit and she advised that Ms. Prall can be considered for placement into the Options Program for pretrial release.  The Options Program provides intensive supervision services with a limited number of housing placements .  The program also provides transportation for Ms. Prall from the Court for initial intake with the mental health service provider.  It will also provide housing placement for her upon her release. Ms. Carson has contacted a facility that at the time of this writing had two bed spaces available.  However, Ms. Prall must first be evaluated by a staff member and found eligible before she can be placed into the program.  The assessment has to take place at the cellblock because evaluations are not done at the Central Treatment Facility where Ms. Prall is currently located.  According to Ms. Carson, a staff member from her office is willing and able to meet with Ms. Prall as early as Friday, September 22nd or Monday, September 25th, or as soon as the court can so direct.