**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **Criminal No. 06-0247 (RJL)** |
| v. | : | |
| | : | |
| **YEATO PRALL,** | : | |
| | : | |
| Defendant | : | |
| | : | |
| | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing decision. Consistent with the plea agreement in this case, the factors set forth in Title 18, United States Code, Section 3553, and the recommendation of the United States Sentencing Commission, the Government requests that this Court sentence the defendant to a prison term in the range of **18 to 24 months.**

This is a threats case. Ms. Prall was a vexatious civil plaintiff[1] in a series of lawsuits she brought against Howard University and others. She has admitted, in pleading guilty to Count I here, that she threatened the presiding judge, Associate Judge Russell F. Canan, his staff and his family, because she wanted Judge Canan to recuse himself.

---

[1]   Notwithstanding her status in the civil suits, Ms. Prall will be referred to at all times herein as "the defendant."

-2-

A.  Procedural History

On March 15, 2007, defendant Yeato Prall pleaded guilty to Count I of a four-count Indictment charging threatening interstate communications (in violation of 18 U.S.C. §875) and threatening a federal official (in violation of 18 U.S.C. §115). In return for the defendant's guilty plea to Count I and her admission to the conduct supporting the additional charges, the Government has agreed to dismiss all of the remaining counts at sentencing.  The defendant has been incarcerated since her arrest on May 25, 2006.

B.  Factual Summary

The threats charged here were committed in the context of lawsuits filed by the defendant against Howard University (and various employees in their individual capacity), complaining of her failure to obtain her Ph.D. degree and the University's unwillingness to permit her to remain in University housing.[2]

---

[2]    See Prall v. Howard University, 03-CA-6016; Prall v. Kanwal K. Gambhir, 04-CA-5226; and Prall v. Howard University 04-CA-3202 (designated the "consolidated cases").  See also Prall v. Kanwal Gambhir, 04-CA-2319; Prall v. Howard University Hospital, 04-CA-3783; Prall v. Howard University, et al., 04-CA-6635; Prall v. Howard University, 05-CA-8019 (seeking injunctive relief and filed one day after an identical request was denied); Prall v. Howard University, Kanwal Gambhir, Joseph Reidy and Sharon Banks; Prall v. Bryan Cave, 06-CA-2653. Additional lawsuits filed by the defendant in D.C. Superior Court against the University, its employees and attorneys, based on the same facts, include:  06-CA-2654; 05-SC3-14364; 05-SC3-14365; 05-SC3-14366; and 06-SC3-00367.  See also Prall v. Howard University, 06-225 (RMU) (U.S. District Court).

-3-

1.  The "consolidated cases":  Beginning in 2003, the
defendant filed complaint after complaint seeking the same
relief:  1) monetary damages for failure to receive her degree;
and 2) an injunction forbidding eviction from campus housing.[3]
The complaints were variously dismissed or consolidated with the
original complaints pending before Judge Canan

The defendant clearly wanted another judge, and in part, the
multiple filings were attempts to move the matters away from
Judge Canan:  for example, at one point the defendant tried to
remove her cases to United States District Court, but Judge
Ricardo Urbina ordered them returned to the Superior Court; at
another time, she re-filed in Superior Court after docketing a
dismissal praecipe, but the Clerk restored the matter to Judge
Canan's calendar.  Later, the defendant filed a civil suit
against Judge Canan (and another judge the defendant apparently
disliked), hoping to create the appearance of a bias, upon which
Judge Canan would have to recuse.[4]

---

[3]   Judge Canan denied defendant's request for injunctive
relief many times, as had six previous judges reviewing the same
facts: see Order of Apr. 27, 2004 (Albrecht, J.); Order of
June 8, 2004 (Weisberg, J.); Order of Aug. 25, 2004 (Terrell,
J.); Order of Sept. 3, 2004 (Mencher, J.); Order of Sept. 28,
2004 (Blackburne-Rigsby, J.); see also Order of April 8, 2004
(Urbina, J.) (U.S. District Court).

[4]   See Prall v. Russell F. Canan and Frederick H. Weisberg,
06-CA-3103.  We note, as well, that the defendant filed lawsuits
and disciplinary complaints against the attorneys for Howard
University, apparently hoping that these actions would create
conflicts sufficient to force them out of the case, as well.

-4-

As the consolidated cases proceeded, the defendant chose to ignore discovery motions and court orders.  The University complained time and again, that the defendant failed to appear for court-ordered mediation and for scheduled depositions[5] and that she submitted false affidavits that purported to be signed by individuals who since that time have given sworn contrary depositions.[6]  Several times, the University requested dismissal and the imposition of other sanctions.  Each time, the defendant was given an opportunity to comply, and she refused.

As time went on, sanctions were indeed imposed.  On November 30, 2005, Judge Canan ordered that for her failure to respond to interrogatories concerning these issues, the defendant:  1) would not be permitted to present expert evidence or testimony; 2) would not be permitted to present witnesses other than herself; and 3) would not be permitted to offer any testimony or evidence regarding the subject matter of unanswered interrogatories.  In addition, the defendant was deemed to have

---

[5]    After the third time defendant ignored a notice of deposition, the University requested sanctions.  The court declined to impose them and gave defendant another chance to appear.  Instead, this is when the defendant chose to remove her case to U.S. District Court, in what the court later called "a blatant attempt to avoid [the court's] Order."  Amended Order of June 9, 2006, *Prall* v. *Bryan Cave, et al.*, 06-CA-2653, at page 8.

[6]    Two individuals whose affidavits were submitted by the defendant in support of her lawsuits were later deposed by the University.  Each denied signing the affidavits in question and any knowledge of the averments.

-5-

admitted all matters in which she had refused to respond to
requests for admissions or to which she had made groundless
objections.  She was precluded from offering any documentary
evidence not previously provided; and she was assessed reasonable
attorney's fees and expenses associated with the various motions
to compel.[7]

On March 3, 2006, the Court further warned:

> [S]hould another case be filed raising the
> same issues before another judge, the Court
> shall recommend that it be transferred and
> consolidated with the remaining cases.
> Additionally, the Court will consider
> imposing monetary and other sanctions,
> including dismissal, for such vexatious
> behavior.

Order of March 3, 2006, at page 2, note 1.  In response, the
defendant filed three new lawsuits -- two against opposing
counsel (alleging fraud in the pending litigation and requesting
injunctive relief), and the other against Judge Canan and Judge
Weisberg (alleging abuse of process and seeking $1 million in
damages).

On May 2, 2006, Judge Canan signed an Order (docketed in
Chambers on May 10, 2006, and filed by the Clerk of Court on

---

[7] It was to no avail.  In the weeks that followed, the
defendant was given additional opportunities to appear for her
deposition.  With each new notice, the defendant filed a new
complaint, attempting to move the case to a different forum.

-6-

May 12, 2006), dismissing the defendant's lawsuits.

Significantly, the Court also stated:

> The Court also notes that Plaintiff has
> recently filed a civil action against this
> Court and Judge Frederick H. Weisberg,
> [06]-CA-3103.  There is currently no Superior
> Court Civil Rule 63-1 motion before the Court
> requesting recusal.  Even if that were the
> case, the filing of a lawsuit pertaining to a
> judge's adverse rulings does not warrant
> recusal.  *Anderson v. United States*, 754 A.2d
> 920, 925 (D.C. 2000).  This Court declines to
> *sua sponte* recuse based on this newest
> lawsuit, which alleges actions taken by the
> Court while acting in an official capacity in
> the consolidated cases.

Order of May 2, 2006, at page 1, note 1.

　　2.  <u>The Defendant's Death Threats</u>:  The day after the Order
was filed by the Clerk, the defendant asked her friend Sandy
Kamanda if she could use his computer.  The defendant explained
that she wanted to "work on [her] case," and although she
generally used the computers at Georgetown University Law Center
("GULC"), it was then "exam week" and only students were
permitted to use the law library.  Kamanda gave the defendant
directions to his apartment in Frederick, Maryland (later found
in her purse) and she arrived in the early evening to use his
computer.

　　At 9:22 p.m., on May 13, 2006, the defendant sent the first
email threat to Judge Canan, from an Internet "Hotmail" account
in the name "darvin_bloom."  It stated:

-7-

"YOU ARE IMMEDIATELY ADVISED TO RECUSE
YOURSELF FROM PRALL V. HOWARD UNIVERSITY OR
ANY ACTION FILED BY PRALL OR YOU WILL BE
FOUND DEAD!!  YOUR FAMILY MEMBERS WILL FACE
THE SAME CONSEQUENCE.  THIS IS NOT A THREAT
BUT PROMISE.

I AM ASHAMED THAT I AM A WHITE MALE.  YOU ARE
ALSO A DISGRACE TO THE JUSTICE SYSTEM.  COURT
RECORDS INDICATE THAT YOU HAVE BEEN SUED BY
PRALL WHO YOU HAVE HARMED HEARTLESSLEY [sic].
SHOULD YOU FAIL TO RECUSE YOURSELF
IMMEDIATELY FROM ALL CASES CONCERNING PRALL
AND DECIDE TO MAKE ANY FURTHER RULINGS, YOU
WILL BE FOUND DEAD!  YOUR STAFF WILL BE
SUBJECT TO SERIOUS HARM SHOULD YOU FAIL TO
HEED THIS WARNING."

*See* Indictment, Count I.

As a result of this threat, the United States Marshals
Service established a protective detail for Judge Canan and the
FBI opened an investigation to trace the source of the threat.
Hotmail, advised that the "bloom_darvin" account was opened just
prior to the sending of the threatening email to Judge Canan,
from IP address 70.109.82.46, which Verizon advised was
registered to Kamanda's residence.  Kamanda confirmed what the
agents suspected -- that the defendant was using the computer
when the threat was sent.

On Thursday, May 25, 2006, in the mid-morning, the FBI and
Kamanda made a consensually monitored telephone call to the
defendant.  When asked about the threat, the defendant pretended
surprise, claiming that she only had sent emails to a reporter at
the Washington Post and to television personality Oprah Winfrey,

-8-

attempting to attract media attention to her lawsuits against Howard.[8]  Also, the defendant told Kamanda that he should not worry that the FBI had seized his computer because "I am quite sure" that Judge Canan "will get more threats" and the FBI "will have to go everywhere, to everywhere and get everybody's computers, in different states.  That's what going to happen."

Just a few hours later, the defendant sent another e-mail to Judge Canan.  Using the name "smithp.frederick @Yahoo.com," the defendant wrote:

> "You are a blatant racist and a DISGRACE FOR
> A JUDGE.  TAKE THIS E-MAIL SERIOUSLY.
> IMMEDIATELY RECUSE YOURSELF FROM ALL CASES
> INVOLVING YEATO PRALL, HOWARD UNIVERSITY AND
> BRYAN CAVE OR YOU WILL SURELY REGRET!  YOU
> AND YOUR FAMILY WILL NEVER LIVE TO TELL THE
> STORY.
> THIS IS NOT A THREAT BUT A PROMISE."

*See* Indictment, Count III.

"Yahoo!" advised that the "smithp.frederick" account was opened just prior to the threatening email to Judge Canan, and has not been used since, and that the email came from IP address 141.161.252.26, traceable to Georgetown University, which advised

---

[8] These admissions proved valuable, when the FBI Computer Analysis Response Team confirmed the presence, on the hard-drive, of the following contacts:  at 8:46 p.m., the Yeato Prall email account at Yahoo! was accessed; at 8:58 p.m., the "bloom_darvin" account was created at Hotmail; at 9:12, 9:13 and 9:22 p.m., the threatening email was attempted and ultimately sent to Judge Canan's chambers, using the bloom_darvin account; at 11:41 p.m., the reporter's email was sent to the Washington Post; and at 11:43 p.m., contact was made with the Oprah Winfrey website.

-9-

that this computer is located in the GULC law library.

The defendant was arrested, and agents seized the contents
of her purse, hotel room and rental car.  In defendant Prall's
purse was found a small piece of note paper with handwritten
notations, including Judge Canan's email address, "darvin bloom"
(the hotmail account used in the first threat), "password:
racist," and other registration information.  Another piece of
note paper bears the phone number and email address of the
Washington Post reporter contacted from Kamanda's computer, and
the notation, "D.C. Judge sued but refuses to recuse himself."  A
third piece of paper contained several additional handwritten
notations, including "Frederick Smith" and "smithp.frederick
@yahoo" (the account used in the second threat).

## C.  Sentencing Guidelines

Under the terms of the plea agreement, the parties agree
that a reasonable and appropriate sentencing range is 18 to 24
months.  The Presentence Report concurs in this recommendation,
based on the calculations of the United States Sentencing
Guidelines ("U.S.S.G."), including it's assessment that the
defendant falls within a Criminal History Category I.  The
U.S.S.G. recommended range is based on the following calculation:

| | | |
|---|---|---|
| §2A6.1(a) | Base Offense Level | 12 |
| 3A1.2(b) | Official Victim | +6 |
| 3E1.1(b) | Acceptance of Responsibility | -3 |
| | | |
| | Total Adjusted Offense Level | 15 |

-10-

It is the government's position, as set forth below, that this range is also supported by consideration of the factors set forth in 18 U.S.C. §3553.  More specifically, the government asserts that there is no §3553 factor that suggests appropriate reasons or extraordinary circumstances for the Court to depart from the recommended range or to impose a non-guidelines sentence.

D.  <u>Sentencing Factors under 18 U.S.C. §3553</u>

As the Court is well-aware, the recommended sentence set forth in the U.S.S.G. is but one factor this Court should consider in determining an appropriate sentence.  But as set forth below, the additional considerations this Court should consider do not suggest any reason nor provide any basis for a sentence in this case different from that recommended by the Sentencing Commission.  The factors set forth in 18 U.S.C. §3553(a), are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed --
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

-11-

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines --

        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress ...; and

        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement --

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress ... and

    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).  It is clear from the explicit language of the statute that the framers both endorse and respect the ranges set by and the policy statements made by the United States

-12-

Sentencing Commission, which in these circumstances recommends imprisonment. The converse is also true, that is, that U.S.S.G. explicitly recognizes §3553 as its lynchpin, setting forth in its preamble its reliance on the statute and calling out each and every factor set forth therein. We note most particularly the factor set forth in §3553(a)(6), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," which is the heart and spirit of the Guidelines. *See* 18 U.S.C. §3553(a)(6). It is in this spirit and with this commitment that the government presses the Court for a sentence consistent with the U.S.S.G.

Looking to the factors of §3553, we first contend that a sentence within the range of 18 to 24 months is appropriate to the "nature and circumstances of the offense and the history and characteristics of the defendant" (*see* §3553(a)(1)). This defendant disrespected a court system that exists to redress the tortious wrongs and contractual breaches of all citizens. What may have started as an arguably meritorious complaint degenerated into a vicious, vexing, aggravating pattern of harassment against the University, its employees, its lawyers, the many judges of the Superior Court and U.S. District Court before whom the case was brought, and in the case of Judge Canan, his staff and family. The defendant dedicated herself to providing misery, harassment and ultimately fear, to the University's employees and

-13-

attorneys, using the court system as her instrument of torment.
The defendant's behavior in this lawsuit set the stage for her
outrageous conduct toward the presiding judge, insisting that he
remove himself from the case so that she could pursue her desired
outcome.  Attempts to influence the actions of a presiding judge,
through a threat of violence -- not only against him, but his
staff and family -- are clearly serious, and in need of
punishment sufficient to promote respect for the law.

     While the defendant's history and characteristics may not
reflect criminal convictions, they do reflect a determined woman,
willing to succeed in her lawsuit by any means, including
falsifying evidence, menacing people with threats of physical
violence, and harassing them with lawsuits and complaints of
professional misconduct.  Only a sentence of imprisonment will
"reflect the seriousness of the offense ... promote respect for
the law, and ... provide just punishment" (*see* §3553(a)(2)(A)),
and at the same time "afford adequate deterrence to [future]
criminal conduct" (*see* §3553(a)(2)(B)).  This defendant tried to
pervert the law by influencing a judge with threats of violence.
Although she succeeded in forcing Judge Canan to recuse,[9] her

_____

     [9]   Judge Canan recused himself from Ms. Prall's litigation
with great reluctance, holding as follows:

          "Throughout the course of this litigation,
          the Court has taken seriously its strong
          'obligation not to recuse when the situation

                                             (continued...)

-14-

conduct, from start to finish, was completely unnecessary.  The
defendant has college degrees, appears to be of above-average
intelligence, and has employable skills.  She would have been
better served to have an attorney pursue her case, while she
pursued employment.

The government anticipates that the defendant will ask for
consideration of mental health issues because after her arrest,
the defendant was diagnosed with depression.  The government does
not agree that depression entitles the defendant to special
treatment.  Even individuals suffering from serious mental health
disturbances are not so entitled -- and the defendant does not
even appear to be arguing that she has serious mental health
disturbance:  the U.S.S.G. stresses that uniform treatment of all
defendants requires that those with "mental and emotional

---

[9](...continued)
            does not require.'  Now, although the Court
            is reluctant to grant [Ms. Prall's] request
            because of the means apparently employed by
            [Ms. Prall] to prevent her case from being
            heard by this Court, the Court is mindful
            that an average citizen could reasonably
            question the Court's impartiality towards a
            party accused of threatening the life of this
            Court's family, staff, and the Court itself.
            Thus, [Ms. Prall's Expedited Motion for
            Recusal and/or Disqualification of Judge
            Russell Canan] shall be denied as without
            merit but the Court shall *sua sponte* recuse
            itself from all of Plaintiff Yeato Prall's
            matters."

Order of June 9, 2006, at page 13, *quoting* <u>Kreuzer</u> v. <u>George
Washington University</u>, 896 A.2d 238, 250 (April 13, 2006).

-15-

conditions" be considered only for special conditions of any
probation or supervised release. *See* U.S.S.G. §5H1.3.

Nor does any other specific guidance related to mental
health apply to this defendant. U.S.S.G. §5K2.13 refers to
defendants "suffering from a significantly reduced mental
capacity," but it can hardly be said that the defendant suffers
from "diminished capacity," given her advanced degrees and her
prolonged and calculated conduct throughout the civil litigation.
In any event, §5K2.13 explicitly disapproves of departure where,
as here, "the facts and circumstances of the defendant's offense
indicate a need to protect the public because the offense
involved actual violence or a serious threat of violence." *Id.*
Here, the defendant posed a serious threat to Judge Canan for
many reasons, including her persistence -- *even after she was
told that the FBI was investigating her first threat* -- to find
another location, invent another *persona,* and send yet another
frightening message of violence: "You and your family will never
live to tell the story." This disrespectful and audacious
behavior deserves incarceration. It does not merit the kind of
special consideration required for the imposition of a non-
guidelines sentence. And it should cause concern that the
defendant would not and did not curb her aggressive behavior,
even when she knew that law enforcement had her under
investigation. It's as if she wanted to create even greater fear

-16-

in her victims that perhaps she was beyond the reach of the FBI.
At a minimum, the defendant was trying to cover her tracks by
making sure that the FBI would be too busy having to go
"everywhere and get everyone's computers" to prove that she had
sent the threats to Judge Canan and his family.  *See* Statement of
Facts at page 4, ¶9.  These are not the actions of a "diminished"
person.  They are evidence of calculated reasoning.  The
government contends, therefore, that no special consideration is
due here, and that both the "nature and circumstances of the
offense and the history and characteristics of the defendant"
support a sentence of incarceration.  18 U.S.C. §3553(a)(1).

Section 3553 places fundamental emphasis on uniformity of
sentencing, which adherence to the guidelines provides.  An
appropriate sentence, therefore, is in Zone C, in the range of 18
to 24 months, consistent with similar crimes and the defendants
committing them.  The defendant does not and cannot articulate
any compelling fact or circumstance that justifies a sentence
lower than similarly situated offenders.  Certainly, no factor
suggests that the defendant is entitled to a non-guidelines
sentence.

-17-

<u>Conclusion</u>

The government believes that a sentence of 18 to 24 months incarceration is reasonable and appropriate to the facts of this case and the circumstances of this defendant, as recommended by the parties, as suggested by an examination of the factors of §3553(a), as set forth in the Sentencing Guidelines, and as endorsed by the Presentence Report.

Respectfully Submitted,

_____  JEFFREY A. TAYLOR
                         UNITED STATES ATTORNEY
                         D.C. Bar Number 498610


By: _____
    BARBARA E. KITTAY
    D.C. Bar Number 414216
    PERHAM GORJI
    Assistant U.S. Attorneys
    555 Fourth Street, N.W., Rm. 4846
    Washington, D.C.  20530
    Tel. (202) 514-6940
    Barbara.Kittay@usdoj.gov